**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES GOVERNMENT
STATE OF WISCONSIN,
CITY OF MILWAUKEE;
STATE OF MICHIGAN,
CITY OF DETROIT,
SERVICE MEMBER GROUP LIFE INSURANCE CORPORATION

MICHAEL O'GRADY,

Plaintiffs,

No. 00 Civ. 1727 DDA/SRN

v.

**ORDER**

DEPARTMENT OF THE ARMY,
LOUIS CALDERA;
WILLIAM TANGNEY;
BRYAN GOLDEN;
RONALD BAYLOR;
MILLER, PADDOCK, CANFIELD & STONE LAW FIRM [sic];
KEITH SWANSON;
SWANSON AND DETTMAN LAW FIRM;
NORTHERN MICHIGAN UNIVERSITY,
DEPARTMENT OF PUBLIC SAFETY,
UNIVERSITY HOUSING,
ACCOUNT RECEIVING AND COLLECTIONS,
OFFICE OF THE REGISTRAR,
CYNTHIA COPE,
MICHIGAN MARQUETTE COUNTY PROSECUTORS OFFICE,
MICHIGAN DEPARTMENT OF STATE POLICE;
STEVE BILENKY [sic];
DEBRA THILGEN;
DAMEON GRAY;
RICHARD JACKSON;
LIEUTENANT STEEGEL [sic];
CIVIL AFFAIRS & PSYCHOLOGICAL OPERATIONS COMMAND;
KENNETH CHANT;
THOMAS LEISURE;
JEFFREY MINCHEFF;
VICTOR LADUKE;
EDWARD J. NIEMI;
JUDITH BAILEY;
MARILYN M. ROBBERT;
DONNA YETTER;
GARY WALKER;
MATTHEW WIESE;[]
RICHARD GOAD;
MYLES MCCORMACK;
MIKE ROBINSON;
MARK NYVOLD;
ROBERT LEHMAN;

FILED SEP 19 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD SEP 19 2000
DEPUTY CLERK

CHARLES DONNEL;
ARTHUR FRENCH;
HERBERT ALTSCHULER;
SCOTT CHAPMAN;
MARK V. PHELAN;
BRUCE BINGHAM and
CARL COOK,

Defendants.

---

After bringing three factually similar lawsuits, two in the United States District Court for the Western District of Wisconsin and one in the United States District Court for the Western District of Michigan, all of which have been dismissed, Plaintiff Michael O'Grady has now filed this pro se, fee-paid, Complaint on behalf of himself and purportedly on behalf of the United States government, the State Of Wisconsin, the City of Milwaukee, the State of Michigan, the City of Detroit and the Service Member Group Life Insurance Corporation against the forty-three above named Defendants. Plaintiff alleges nine counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; multiple violations of his Fourteenth Amendment due process rights; multiple violations of his civil rights under 42 U.S.C. §§ 1983, 1985; and a "Posse Comitatus" action under 18 U.S.C. § 1385. Plaintiff has also brought six motions, two petitions, and filed two amendments to the Complaint. The Court holds sua sponte that it is without subject matter jurisdiction over this complaint and will dismiss the action with prejudice.

**BACKGROUND**

According to the Complaint, this action stems from a series of events beginning in 1993 and continuing through to the present. In November 1993, while a student at Northern Michigan University, Plaintiff was arrested for allegedly assaulting his wife. In early 1994, a Northern Michigan University Police Officer was accused, through a series of anonymous letters, of child molestation, marital infidelity, and police misconduct. Two other officers were also accused, by anonymous letters, of sexual harassment and police corruption. The Michigan State Police believed that Plaintiff, a former employee of the Northern Michigan University Public Safety Department,

might have information regarding these letters. In March 1994, University Police executed a search warrant to seize a computer, computer disks, a typewriter, correspondence, files, and other items in Plaintiff's apartment. The police also seized three firearms and three holsters during the execution of this search warrant. Plaintiff was charged with stalking, slander, filing a false police report, possession of a switchblade, and possession of an unregistered handgun, all of which Plaintiff denies.

Before Plaintiff was prosecuted for the criminal allegations, he left the State of Michigan. In July 1995, Northern Michigan University expelled Plaintiff, while he was in Wisconsin on Army Reserve duty, due to the pending criminal allegations. The University also withheld Plaintiff's Masters degree. Plaintiff maintains that the University's actions were improper and based on illegal police investigations.

In May 1998, Plaintiff applied for a job as a police officer in Milwaukee, Wisconsin. During the background check, the Milwaukee Police Department learned of Plaintiff's pending criminal charges in Michigan and denied him employment.

In May 1999, Plaintiff accepted a position as a part-time Army Reserve Officer. While in the Army Reserve, Plaintiff became upset when one of his commanding officers required him to donate $20 to the officer's "slush fund." This same officer also refused Plaintiff's twenty requests for transfer to the "Individual Ready Reserve." Plaintiff filed a Complaint with the Civil Affairs Inspector General requesting an investigation, and later filed a Complaint with the Civil Affairs Commander. In July 1999, Plaintiff's Army superiors learned of Plaintiff's pending criminal charges. In May 2000, the United States Army initiated an involuntary separation action seeking to dishonorably discharge Plaintiff from the United States Army. The separation procedure is ongoing and Plaintiff continues to assert that the action is improper and based on falsified reports.

On August 18, 1998, Plaintiff filed suit in the United States District Court for the Western District of Wisconsin against Defendants Northern Michigan University, Edward Niemi, Kenneth Chant, Thomas Leisure, and Victor LaDuke, alleging that Defendants violated multiple laws when searching his apartment in 1994 and during the subsequent investigation (Case No. 98-C-0589-C).

Plaintiff requested "injunctive relief and damages for violation of constitution [sic] and laws of the United States." Plaintiff asserted, inter alia, that the University Police illegally searched his apartment in 1994; a police officer made false statements and allegations about Plaintiff; the University Police supervisors did not adequately review the conduct of the University Police; the University improperly expelled him in violation of his constitutional rights; and various other allegations based on conspiracy theories and constitutional violations. Plaintiff requested that the Court declare Plaintiff's expulsion void, award Plaintiff a Masters degree, expunge Plaintiff's record, and award Plaintiff $200,000 in compensatory and punitive damages. In an Order dated December 24, 1998, Judge Barbara Crabb dismissed part of Plaintiff's action based on the University's Eleventh Amendment immunity and granted the Defendants' motions to dismiss for lack of personal jurisdiction and improper venue.

On June 11, 1999, Plaintiff brought a second action in the Western District of Wisconsin seeking "injunctive relief and damages for violation of constitution [sic] and laws of the United States" against the City of Milwaukee, Jay Martyka, Victor LaDuke, Joseph Czarnezki, Kenneth Chant, Edward Niemi, Cynthia Nowak, Thomas Leisure, Richard Goad, Arthur Jones, Jeffrey Mincheff, and Myles McCromack (Case No. 99-C-0383-C). The second Wisconsin action focused on Plaintiff's inability to secure a job with the Milwaukee Police Department due to his military obligations and allegedly false reports provided by the Northern Michigan University Police Department. Plaintiff specifically asserted that Defendants violated his due process rights; falsified police reports with the intent to defame, slander, and discredit Plaintiff; conspired against him; and violated various constitutional and state law provisions. Plaintiff sought a total of $700,000 in compensatory and punitive damages. Judge Crabb granted Defendants' motions to dismiss for improper venue in Orders dated December 15, 1999, and April 10, 2000.

Plaintiff then filed an action in the United States District Court for the Western District of Michigan on January 11, 2000, against the following twenty-three Defendants: Kenneth Chant, Victor LaDuke, Judith Bailey, Mark Nyvold, Charles Donnel, Mark Phelan, Thomas Leisure, Edward Niemi,

Donna Yetter, Robert Lehman, Arthur French, Bruce Bingham, Jeffery Mincheff, Richard Goad, Mike Robinson, Scott Chapman, Michael Quin, Carl Cook, Gary Walker, Myles McCormack, Marilyn Robbert, Herbert Altschuler, and Matthew Wiese (Case No. 00- CV- 5). Plaintiff's action in the Michigan District Court involved accusations stemming from his contact with Northern Michigan Police beginning in 1993, his inability to obtain a job with the Milwaukee Police Department, and problems connected to his Army Reserve service. The Complaint listed numerous allegations including illegal search and seizure; falsification of police reports; distribution of false police reports with the intent to slander Plaintiff; violations of his Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendment rights; racketeering and conspiracy charges; and violations of various state criminal statutes. Plaintiff requested $4,000,000 in compensatory and punitive damages.

The Michigan District Court set a hearing date for June 26, 2000. On June 21, 2000, Plaintiff filed a Motion to Stay the Order for the Hearing, stating that he was to appear "before military court on or about the same date in North Carolina." Plaintiff's motion was denied and he was ordered to appear for the hearing, which he failed to do. Lieutenant Colonel Robert A. Mast filed a declaration with the Court stating that Plaintiff was not ordered to appear in military court as Plaintiff had attested to the District Court. Plaintiff was then ordered to appear before the Michigan Court on July 11, 2000, to show cause for failure to appear; Plaintiff did not attend the hearing. On July 12, 2000, Magistrate Judge Timothy Greeley made the following recommendations: Defendants' motion to dismiss with prejudice be granted; Plaintiff's Complaint be dismissed with prejudice for failure to prosecute pursuant to Fed.R.Civ.P. 41(b); Plaintiff's Motion for Summary Judgment be denied; Defendants' Motion to Dismiss Plaintiff's Complaint be denied as moot; sanctions be assessed for violation of Fed.R.Civ. P. 11 (c)(1)(B) in the amount of $1,000; the Court deny Plaintiff the right to file an action in the Western District of Michigan without leave of Court; and Defendants be granted costs and fees incurred for attendance and preparation of the June 26, 2000, and July 11, 2000, hearings.

Plaintiff was notified of a hearing before Judge Robert Bell on this matter scheduled for June 28, 2000. Plaintiff failed to appear at the hearing prompting Judge Bell to adopt Magistrate Judge Greeley's Report and Recommendation in an Order dated August 30, 2000. Judge Bell awarded Defendants additional fees and costs and prohibited Plaintiff "from filing any further lawsuits in this or any United States District Court relating to the facts and circumstances alleged in the Complaint filed in this action without first submitting a proposed Complaint to the Magistrate Judge." O'Grady v. Chant, No. 00-CV-5 (W.D.Mich. August 30, 2000).

Plaintiff has filed a Notice Of Appeal to the Sixth Circuit Court of Appeals regarding Judge Bell's August 30, 2000, order. In addition, on September 11, 2000, Plaintiff filed the following motions in connection with the Michigan case: Motion to Deny Demand of Attorney Fees; Motion for Judge Bell's Recusal; and Motion for a Change of Venue to the District Court of Minnesota.

Before issuance of Judge Bell's order restricting Plaintiff from filing any further federal lawsuits pertaining to the above facts, Plaintiff filed this Complaint in United States District Court for the District of Minnesota on July 21, 2000. In this action, Plaintiff claims to bring his suit on behalf of the United States of America, the State of Wisconsin, the City of Milwaukee, the State of Michigan, the City of Detroit, and Service Member Group Life Insurance Corporation. Plaintiff names as Defendants thirteen officials of Northern Michigan University; five officials of the Michigan Department of State Police; four officials of Marquette County, Michigan; seventeen officials of the United States Army; two attorneys; and two law firms. Of these forty-three Defendants, only five reside in the State of Minnesota. This Complaint is based on facts beginning in 1993 when Plaintiff was a student at Northern Michigan University, continuing through to his attempt to obtain employment in Wisconsin and his encounters with Army Reserve officials in 1998. The Complaint alleges nine counts under RICO; multiple violations of his Fourteenth Amendment due process rights; multiple civil rights violations under 42 U.S.C. §§ 1983, 1985; and a claim under the "Posse Comitatus Act," 18 U.S.C. § 1385. Plaintiff also asserts more generally claims of fraud; falsification of police reports; illegal search and seizure; illegal use of the United States Postal Service; violations

of various Wisconsin criminal statutes; negligent police supervision; violations of his Fourth, Fifth, Sixth, and Seventh Amendment rights; and other various claims. Plaintiff seeks $1,000,000 in compensatory and punitive damages. Of the operative facts in the 115 paragraph Complaint, few incidents occurred in Minnesota.

Since filing his Complaint in this Court on July 27, 2000, Plaintiff has filed six motions, two petitions, and has twice sought to amend the Complaint and purported to add parties, once before and once after answers had been filed.

On August 7, 2000, Plaintiff filed a Motion for a Temporary Restraining Order against the United States Army "to immediately cease and desist with any and all acts in the involuntary administrative discharge action involving Plaintiff." In this motion, Plaintiff claims that Defendant Nyvold, a Lieutenant Colonel for the Army Reserve, submitted fraudulent reports and documents causing the Army to initiate an involuntary separation action against him.

On August 14, 2000, Plaintiff filed a Motion for the Appointment of an Assistant United States Attorney "to assist Plaintiff and ensure the property interest and the recovery of United states [sic] government assets is properly represented." Plaintiff asked this Court to appoint an attorney to represent the United States Government on "behalf of Plaintiffs [sic] allegations" because the Complaint alleges civil rights violations and fraud perpetrated on the United States.

Also on August 14, 2000, Plaintiff filed a Motion to Quash Criminal Allegations "as a matter of constitutional law for deprivation of rights." Plaintiff claims that Defendant Walker, a Marquette Michigan County Prosecutor, improperly refused to dismiss the Michigan criminal charges against Plaintiff, after Plaintiff presented Defendant Walker with evidence of prosecutorial misconduct, police misconduct, fraud, and malicious prosecution. In addition, Plaintiff claims that he was denied legal counsel, denied the right to trial, and denied access to the courts in violation of his Second, Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Defendant asks this Court to "'quash', suppresses [sic], dismiss, and/or deem unconstitutional all allegations made against Plaintiff by the Defendants."

On August 28, 2000, Plaintiff amended his Complaint to include a tenth RICO count, filed a Motion for Discovery, a Motion for Return of Property, and a Petition for a Writ of "Hambus Corpus [sic]." Plaintiff's tenth RICO count alleges that the previously named Defendants and two new Defendants, Kenneth Ross and John Salan, violated the law through the "fraudulent use and misuse of judicial and legal process to defraud in furtherance of scheme to recovery [sic] fraudulent legal expenses and charges."

In his Motion for Return of Property, Plaintiff asserts that Defendant Northern Michigan University is in unlawful possession of his firearms, holsters, and Masters degree. Plaintiff asserts that he is entitled to his Masters degree because Northern Michigan University violated the student code and denied him due process before expelling him. In his Motion for Discovery, Plaintiff asks that all Defendants answer his fifteen interrogatories and comply with various discovery requests.

In his Petition for a Writ of "Hambus Corpus [sic]" Plaintiff asks this Court "to order the Department of Army, Honorable Louis Caldera to produce a material witness Captain Domenic Amato." Plaintiff alleges that Captain Amato has been transferred overseas on a military assignment and believes that Defendants have concealed the whereabouts of Captain Amato from him. Plaintiff specifically requests that the United States Army "produce Captain Amato in person to meet with Plaintiff in Madison Wisconsin."

On August 30, 2000, Plaintiff filed a Motion for a Preliminary Injunction to block the United States Army from proceeding with an involuntary separation hearing. Plaintiff requested an "immediate injunction to prevent irreparable injury inflicted upon Plaintiff through actions of Defendants and agents acting at the behest of the Defendants and others." The grounds for the injunction were that certain unnamed Defendants have allegedly made fraudulent criminal allegations and violated federal constitutional law, and that multiple Army officers have acted "to aid and abet a fraudulent scheme to defraud Plaintiff of military employment and career." This Court denied Plaintiff's Motion for a Preliminary Injunction on September 13, 2000.

On September 1, 2000, Plaintiff filed a Petition for a Writ of Mandamus under 28 U.S.C. § 1361 to "prevent irreparable injury from unlawful involuntary discharge as [sic] US Government military employee and to be afforded all Fourteenth and other amendments to the Constitutional [sic] rights and protections and be afforded Equal Protection under the law." In his petition, Plaintiff requested the following accommodations in his preparation for the involuntary separation hearing: (1) active duty status with pay; (2) a government vehicle, expenses, lodging, and a duty station in Madison, Wisconsin for a period of 180 days to prepare a defense to the allegations; (3) access to a law library and all applicable Army rules and regulations at government expense; (4) a government work facility, support staff, and a work station; (5) that all potential witnesses travel to Madison, Wisconsin for interviews; (6) that the Army turn over all evidence and discovery from its investigation of this case; (7) that the Court delay the Army's involuntary separation hearing until October 16, 2000; (8) that Plaintiff is provided with full-time legal counsel at the government's expense; and (9) that the Army and its representatives obey federal law. This Court denied Plaintiff's Petition for a Writ of Mandamus in an order dated September 13, 2000.

On September 5, 2000, Plaintiff filed an amended Complaint to include an eleventh RICO count by adding Pam Chant as a Defendant. According to Plaintiff's memorandum in support of this request, Pam Chant, "an immediate family member of Defendant Kenneth Chant," is also a participant in a "scheme to defraud" Plaintiff. Pam Chant is an employee of the United States District Court for the Western District of Michigan and had apparently spoken to Plaintiff over the telephone to inform him that a court hearing was rescheduled. Plaintiff claims that Pam Chant "acted or failed to act in a manner which may have influenced the court providing unfair advantage to the Defendants," and that this action was "in furtherance of scheme to fraudulent [sic] cause a administrative action for the purpose and intent the [sic] unlawfully cause Plaintiff to be obstructed or prevented from appearing before the court for hearings." Defendants Keith Swanson and the law firm of Swanson and Dettmann have answered and brought a Counterclaim alleging that Plaintiff has brought a frivolous lawsuit and request that the Court sanction Plaintiff under Fed.R.Civ.P. 11 and

28 U.S.C. § 1927.

Defendants State of Michigan, the Michigan Department of State Police, Colonel Mike Robinson, Inspector Myles McCormack, Detective Richard Goad, and Lieutenant Steggal have brought a Motion to Dismiss the Complaint for lack of personal jurisdiction.

Cynthia Cope, the Marquette County Prosecutor's Office, Gary Walker, and Matthew Wiese have answered and brought a Counterclaim alleging that Plaintiff has brought a frivolous lawsuit and request that the Court sanction Plaintiff under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

Defendants Ronald Baylor; Miller, Canfield, Paddock and Stone, P.L.C.; Northern Michigan University; Gary Bilenky; Steve Bigalk; Kenneth Chant; Thomas Leisure; Jeffrey Mincheff; Victor LaDuke; Edward Niemi; Judith Bailey; and Marilyn Robbert have moved to dismiss this case for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue.

For the following reasons this Court will dismiss the Plaintiff's Complaint in its entirety with prejudice.

**DISCUSSION**

This Court has a duty to review its jurisdiction and dismiss a case if jurisdiction is lacking. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). Federal Rule of Civil Procedure12(h)(3) explicitly provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." See also Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993) ("Lack of subject matter jurisdiction, unlike many other objections to the jurisdiction of a particular court, cannot be waived. It may be raised at any time . . . by the court sua sponte."). Plaintiff invokes federal question jurisdiction under 28 U.S.C. §1331, diversity jurisdiction under 28 U.S.C. § 1332, and supplemental jurisdiction under 28 U.S.C.§ 1367. Despite Plaintiff's assertions, this Court lacks subject matter jurisdiction over Plaintiff's claims for two reasons: (1) the existence of state and federal immunity; and (2) the Complaint is totally frivolous.

I.

None of the jurisdictional statutes cited by Plaintiff gives this Court subject matter jurisdiction over the action insofar as recovery is sought against the United States, its agencies, or its officials sued in their official capacities. As a sovereign power, the United States may be sued only to the extent that it has consented to suit by statute. See United States Dep't of Energy v. Ohio, 503 U.S. 607, 615, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992). Waiver of the Federal Government's sovereign immunity must be unequivocal. See United States v. Mitchell, 445 U.S. 535, 538-39, 100 S.Ct. 1349, 1351-52, 63 L.Ed.2d 607 (1980). The United States has not waived its sovereign immunity from suit on the grounds alleged by Plaintiff. See 28 U.S.C. §§ 1331, 1332, 1367; see also Whittle v. United States, 7 F.3d 1259, 1262 (6th Cir. 1993) (noting that 28 U.S.C. § 1331 is "not a general waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain"). The absence of consent is a fundamental defect and deprives this Court of subject matter jurisdiction. See United States v. Sherwood, 312 U.S. 584, 587-88, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941); see also United States v. Johnson, 853 F.2d 619, 623 n.7 (8th Cir. 1988) (noting that the issue of sovereign immunity is a jurisdictional question that may be raised at any time). The federal government has not consented to being sued based on the actions alleged in this Complaint, therefore the Court is without jurisdiction over the United States and its agencies.

The Complaint alleges claims against federal employees in their official capacities. A person alleging to sue a federal officer must "demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States, or that in effect the proceeding is not a suit against the United States." 14 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3655 (2d ed. 1997). None of the jurisdictional statutes that Plaintiff cites authorize suit against federal employees in their official capacities. See 28 U.S.C. §§ 1331, 1332, 1367; see also Whittle, 7 F.3d at 1262. Therefore, the Court is without jurisdiction over the Defendants who are Federal employees alleged to have acted in their official capacities.

For similar reasons, this Court also lacks subject matter jurisdiction over the State of Michigan, Michigan State agencies, and Michigan state employees acting in their official capacities based on the claims as pled. The Eleventh Amendment bars claims against a state or state agency unless (1) Congress has abrogated the state's immunity, or (2) the state has expressly waived its immunity to suit in federal court. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 907-08, 79 L.Ed 67 (1984). Congress has not abrogated Michigan's immunity nor has Michigan expressly waived its immunity. The same is true for Michigan State officials acting in their official capacities, because "[s]uits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred as suits against the state itself." Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2311-12, 105 L.Ed. 45 (1989). If the Eleventh Amendment divests the Court of subject matter jurisdiction over the claims, then the action should be dismissed. See Treleven v. University of Minnesota, 73 F.3d 816, 818 (8th Cir.1996). The Court lacks jurisdiction to hear the claims against the State of Michigan, Michigan State agencies, and Michigan State government employees acting in their official capacities.

**II.**

The Complaint also alleges federal claims against state and federal employees in their individual capacities as well as claims against non-government actors. This Court does not have subject matter jurisdiction over a claim merely because a federal statute is cited in the Complaint. Subject matter jurisdiction does not exist if (1) the alleged claim is clearly immaterial and asserted solely for the purpose of obtaining jurisdiction; or (2) the claim is insubstantial and frivolous. See Bell v. Hood, 327 U.S. 678, 681-82, 66 S.Ct. 773, 775-76, 90 L.Ed. 939 (1946).

As a threshold matter, a Court must make a "determination of whether the merits of a complaint are sufficiently substantial" before exercising jurisdiction. See Ricketts v. Midwest National Bank, 874 F.2d 1177, 1180 (7th Cir. 1989). This process, of course, does not mean that the Court determines if the Complaint states a claim, an analysis under Fed.R.Civ. P. 12(b)(6), which should be avoided at this stage of the proceedings. See Bell, 327 U.S. at 681-82, 66 S.Ct at 775-76;

Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed. 652 (1972). Rather, the Court's review of the Complaint at this stage of the proceeding is both limited and rigorous. In order for the Court to dismiss a Complaint on the grounds stated in Bell, the Complaint must be "wholly," or "plainly" insubstantial or frivolous; "totally implausible;" "absolutely devoid of merit;" or "no longer open to discussion." Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct 1372, 1378-79, 39 L.Ed. 577 (1974) (citing numerous Supreme Court cases for the proposition that district courts do not have jurisdiction over frivolous or insubstantial cases, but ultimately concluding that the plaintiff's allegations were neither insubstantial or frivolous). The Court recognizes that pro se pleadings must be construed liberally, see Haines, 404 U.S. at 520-21, 92 S.Ct. at 595-96, but despite doing so, this Court is unable to exercise subject matter jurisdiction over the Complaint because it is totally frivolous.

In analyzing frivolousness, the Court relies on the Eighth Circuit's decision in Sassower v. Carlson, 930 F.2d 583 (8th Cir. 1991). In that case, Sassower filed two actions alleging violations under 42 U.S.C. § 1983, and 18 U.S.C. §§ 1961 and 1964 (a), (c) against various state and federal employees; private law firms and attorneys; multiple legal publishers; and a bank. Id. at 584. Sassower also claimed that the Defendants had libeled him, subjected him to unconstitutional criminal convictions and disbarment, seized his assets, and denied him access to certain courts. Id. Sassower's first action, in which he was proceeding in forma pauperis, was dismissed as frivolous under 28 U.S.C. § 1915(d). Id. In Sassower's second action he based his claims on the same facts as in his first action and sued many of the same Defendants, but also added the Magistrate Judge, the district court clerk, and other federal and state judges. Id. Sassower also enlarged his claims to include a due process violation, various conspiracies, and misconduct of the judiciary. Sassower did not proceed in forma pauperis in the second action and the District Court recognized that it could not use the in forma pauperis statute, 28 U.S.C. § 1915, to dismiss Sassower's Complaint as frivolous. See Sassower v. Dosal, 744 F.Supp. 908, 909 (D.Minn. 1990). Instead, the Court dismissed sua sponte Sassower's Complaint for lack of subject matter jurisdiction because the Complaint was

frivolous. Id. The Eighth Circuit affirmed both of Sassower's dismissals and in doing so recognized that even though a lawsuit is allegedly based on federal grounds, it is subject to dismissal for lack of subject matter jurisdiction if it is frivolous. See Sassower v. Carlson, 930 F.2d at 584.

This case is similar to the Sassower cases, in that both cases involve a large number of plainly frivolous and totally implausible claims. For example, Plaintiff improperly brings this action on behalf of the United States Government. Federal district courts have jurisdiction, according to 28 U.S.C.§ 1345, over actions commenced by the United States government or by an authorized agent. The record is devoid of any documentation showing that the United States is a proper Plaintiff in this action. Nor is there any indication in the record that Plaintiff is authorized by the United States to sue as the government's agent. Similarly, there is no evidence in the record to support Plaintiff's purported ability to sue on behalf of the City of Milwaukee, the State of Wisconsin, the City of Detroit, the State of Michigan, or Service Member Group Life Insurance Corporation.

Another deficiency in the Complaint is that Plaintiff inexplicably attempts to tie all of the Defendants' actions together in a "conspiracy," a claim that is not even arguably plausible. See Apple v. Glen, 183 F.3d 477, 479 (6th Cir. 1999) (the court lacked jurisdiction because the claim asserted was not arguably plausible. Plaintiff claimed that his First Amendment right to petition the government was violated because government officials did not answer his letters), cert denied 120 S.Ct. 1263, 146 L.Ed. 118 (2000). Plaintiff has had a number of unfortunate problems: his arrests; his expulsion from school; his rejection as a job applicant; and his involuntary separation hearing with the Army. Plaintiff is clearly upset with the state and federal governments and their officers and has voiced multiple grievances with all of the agencies involved. However, in many instances, Plaintiff asks this Court for relief that it is simply not empowered to provide. For example, Plaintiff asks the Court to award him a Masters degree from Northern Michigan University, a task that this Court is clearly without authority to do. He also asks the Court to intervene in the internal administrative process of the United States Army, which this Court recognizes is not a generally accepted practice. See Nieszner v. Mark, 684 F.2d 562, 565 (8th Cir. 1982) ("[J]udges are not given the task of running

the Army . . . . Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."), cert. denied 103 S.Ct. 1273, 75 L.Ed. 494 (1983).

A careful review of the Complaint reveals that Plaintiff is recycling and expanding the same claims here that he raised in his Wisconsin and Michigan lawsuits. All of these actions have involved the same facts and differ only slightly in that each successive action includes more defendants and a new legal twist to the same claims. The Michigan Court acknowledged this fact in its August 30, 2000, Order in which the Court sanctioned Plaintiff under Fed.R.Civ.P. 11(c)(1)(B) and stated: "Plaintiff is hereby prohibited from filing any further lawsuits in this or any United States District Court relating to the facts and circumstances alleged in the Complaint filed in this action without first submitting a proposed Complaint to the Magistrate Judge." O'Grady v. Chant, No. 00-CV-5 (W.D.Mich. August 30, 2000). This Court recognizes that the Michigan Court's determination is not dispositive of whether Plaintiff's Complaint in this action is frivolous. See Crowley Cutlery Co. v. United States, 849 F.2d 273, 278 (7th Cir. 1988) (noting the difficulty in distinguishing between frivolousness under Fed.R.Civ.P. 11 and "utterly frivolous" for subject matter jurisdiction and concluding that the two contexts are not "completely symmetrical"). But this Court does find it compelling that Plaintiff has asserted these same claims, sometimes under different theories, in other jurisdictions in which he has been unsuccessful.

It is clear after reviewing the Michigan and Wisconsin cases, and all files, records, and proceedings in this case, that Plaintiff's legal claims are devoid of merit and plainly frivolous; therefore the Court will dismiss the Complaint in its entirety. The Court is not required to and will not give Plaintiff the opportunity to amend the Complaint. See Apple, 183 F.3d at 479 (sua sponte dismissals for lack of jurisdiction under a frivolous or insubstantial standard do not require a Plaintiff to be given the right to amend the Complaint).

* * *

Upon its review of all of the files, motions, records, and proceedings herein, it is hereby ORDERED that:

1. Plaintiff's Complaint (Doc. No. 1) is DISMISSED WITH PREJUDICE in its entirety for lack of subject matter jurisdiction WITHOUT LEAVE TO AMEND.

2. Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 2) is DENIED AS MOOT.

3. Plaintiff's Motion for the Appointment of an Assistant United States Attorney (Doc. No. 3) is DENIED AS MOOT.

4. Plaintiff's Motion to Quash Criminal Allegations (Doc. No. 4) is DENIED AS MOOT.

5. Plaintiff's Motion for Discovery (Doc. No. 7) is DENIED AS MOOT.

6. Plaintiff's Motion for Return of Property (Doc. No. 7) is DENIED AS MOOT.

7. Plaintiff's Petition for Writ of "Hambus Corpus [sic]" (Doc. No. 7) is DENIED AS MOOT.

8. The Counterclaim brought by Defendants Keith Swanson and the law firm of Swanson and Dettman (Doc. No. 9) is DISMISSED WITHOUT PREJUDICE.

9. The Motion brought by Defendants State of Michigan, the Michigan Department of State Police, Colonel Mike Robinson, Inspector Myles McCormack, Detective Richard Goad, and Lieutenant Steggal to dismiss the complaint for lack of personal jurisdiction (Doc. No. 11) is DENIED AS MOOT.

10. The Counterclaim brought by Defendants Cynthia Cope, Marquette County Prosecutor's Office, Gary Walker, and Matthew Wiese (Doc. No. 16) is DISMISSED WITHOUT PREJUDICE.

11. The Motions brought by Defendants Ronald Baylor; Miller, Canfield, Paddock and Stone, P.L.C.; Northern Michigan University; Gary Bilenky; Steve Bigalk; Kenneth Chant; Thomas Leisure; Jeffrey Mincheff; Victor LaDuke; Edward Niemi; Judith

Bailey; and Marilyn Robbert to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue (Doc. No. 17) are DENIED AS MOOT.

12. The Clerk enter judgment forthwith as follows:

IT IS ORDERED, ADJUDGED AND DECREED that this action is DISMISSED WITH PREJUDICE in its entirety, WITHOUT LEAVE TO AMEND.

DATED: September 19, 2000

DONALD D. ALSOP, Senior Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: SEP 19 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995